IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NOREEN L. BARONE-DELANEY, aka NOREEN DELANEY | ) ) ) | CASE NO. 4:06CV1240 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| -vs- | ) ) ) | |
| CITY OF SALEM, OHIO, et al., | ) ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) ) ) | |

This matter comes before the Court on Defendants' Motions for Summary Judgment. This Court has been advised, having reviewed the parties' pleadings, motions, oppositions, replies, attached exhibits, and applicable law. For the reasons that follow, the Motions for Summary Judgment are GRANTED IN PART and DENIED IN PART.

**I.  Facts**

On May 18, 2004, Noreen Barone-Delaney called the Salem Police Department ("SPD") to report a breaking and entering. Later that day, Delaney again called the SPD to get assistance in handling her son who had refused to return Delaney's house key. The SPD then received a third call related to Delaney reporting that she was causing a disturbance. Other than those basic facts, the parties' evidence is in strong disagreement.

Delaney's version of the facts details the following events. Delaney heard a knock at her kitchen door and heard someone say "police." Delaney, believing it was a prank, shut her door. Moments later, "the door and the doorframe exploded inward with a loud noise." Officers immediately entered the home, but did not identify themselves. Delaney was not informed that she was under arrest and was held on the ground by an officer's knee on her back. The officers

then dragged Delaney out of her house to a waiting police car and, as a result, Delaney received splinters on the tops of her feet.   The officers "bounced" Delaney's head off the car frame of one of the cruisers before placing her in another cruiser.   As a result of the entire altercation, Delaney suffered wrist and forehead injuries.

In stark contrast, the Defendants' evidence details the following version of events.   On May 18, 2004, Delaney phoned SPD two different times with complaints of a break-in and a domestic dispute.   In the 11:00 p.m. hour, the SPD received a call regarding a domestic dispute at Delaney's home.   The officers responding to this call were advised that SPD had been called to the same residence earlier that day.   The officers knocked on Delaney's door and were told to enter by the individual inside the home.   Officer Robert Floor informed Delaney that he was there on a call about a domestic disturbance.   Delaney became angry and threw the door shut, striking Floor.   Floor then informed Delaney that she was under arrest for assaulting an officer and Delaney placed her hands behind her back.   However, as Floor approached her, Delaney began to run around the table in the kitchen.   Other officers arrived on the scene almost immediately and aided Floor in his attempts to secure Delaney.   During the scuffle, Delaney tried to bite the officers as they attempted to control her.   Once Delaney was secured, officers escorted her to a nearby cruiser.

The evidence presented by the parties also paints a very different picture of the events that occurred after Delaney was taken to the Columbiana County Jail, a facility run by Defendant Civigenics, Inc.   Delaney's version of the facts is as follows.   While Delaney was incarcerated, Civigenics employees working under the supervision of Sheriff David Smith "maced, beat, struck, assaulted and engaged in the use of excessive and unnecessary violence upon the Delaney."

2

(Document No. 39).    Moreover, while in custody, Delaney asked Defendant Officer Brenda Reed for some medicine to relieve her headache.    Rather than providing the medicine, Reed took Delaney out of her cell to an isolated hallway.    In this hallway, Reed "body checked" Delaney twice against the wall without provocation.    Reed then dragged Delaney down the remainder of the hallway by her arm and put her back into a holding cell.    Delaney pounded on the door and yelled repeatedly to see a doctor.    Reed then came into Delaney's cell and twice used Mace on her.    Reed returned to the cell a short time later and offered Delaney a wet napkin to clean her eyes.    Male officers then came into her cell, strapped Delaney to a cot, and refused to let her use the bathroom.

In contrast, the evidence presented by Civigenics and Reed describes the events that occurred as follows.    Delaney was "very disruptive" and began pounding on the door of her holding cell almost immediately upon arriving at the jail.    Reed told Delaney to stop being disruptive, but Delaney refused to comply.    Reed then determined that Delaney should be moved so that she would not disrupt other inmates.    When Reed took Delaney out of her cell to be moved to booking, Delaney attempted to escape.    At this point, Reed "guided" her to the floor by pulling her arm.    After this incident, Delaney was placed in a cell.    When Delaney's disruptive behavior continued, Reed warned her that if the disruptions did not cease that Mace would be used.    Delaney continued her antics, and Reed used chemical spray on her twice.    The bursts of Mace used to restrain Delaney were short, lasting roughly one second.    Shortly after the use of the Mace, Reed took Delaney to a decontamination room where Reed cleaned Delaney and gave her new clothes.

Based on her alleged version of the events, Delaney filed a complaint in this Court on May

3

18, 2006.   In her complaint, Delaney named the following individuals and entities as defendants: the City of Salem, Robert Floor, Charles Shafer, Scott Shoaff, Douglas Rozeski, Brenda Reed, Sheriff David Smith, and Civigenics.   Delaney then amended her complaint on October 5, 2006. Throughout this litigation, Delaney has maintained that the Defendants violated her Fourth and Fourteenth Amendment rights under the color of law.   On May 4, 2007, Defendants Floor, Shafer, Shoaff, Rozeski, and the City of Salem moved for summary judgment.   On May 17, 2007, Defendants Reed, Smith, and Civigenics moved for summary judgment.   Delaney responded in opposition to both motions.   The matter now appears before this Court.

## II.  Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.56(c).   The burden of showing the absence of any "genuine issues" belongs to the moving party.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.*  (quoting Fed. R. Civ. P. 56(c)).   A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* at 252.   A court must view the summary judgment motion "in the light

4

most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). *See also U.S. v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if the party who bears the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Moreover, if the evidence is "merely colorable" and not "significantly probative," a court may decide the legal issue and grant summary judgment. *Id.* at 249-50 (citation omitted). In most civil cases involving summary judgment, a court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving] party is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Fed. R. Civ. P. 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has held that "it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for

5

summary judgment." *Wiley v. U.S.*, 20 F.3d 222, 225 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).   Fed. R. Civ. P. 56(e)(1) sets forth more specific requirements:

> [It] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26.

As a general matter, the district court considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.  *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial.  *Id.*  This does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*  In sum, proper summary judgment analysis asks whether a trial is necessary.  Summary judgment is appropriate where there are no genuine issues of fact.  *Id.* at 250.

## III.   Law and Analysis

### A.   Delaney's Federal claims against Civigenics and David L. Smith

Delaney alleges that Civigenics and Sheriff David L. Smith violated her rights under 42 U.S.C. § 1983 by failing to screen, train and supervise employees under their command.   These defendants may be found liable for a constitutional violation when execution of the entity's policy or custom inflicts the alleged injury.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The official policy or custom "must be the moving force of the constitutional violation" to

6

establish liability.  *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).   Moreover, liable under §

1983 cannot be established absent an underlying constitutional violation by the officers. *City of*

*Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).   However, where a failure to train is the result of

an entity's policy or custom and results in a constitutional violation by its officers, the entity can be

held liable under § 1983.   *Canton v. Harris*, 489 U.S. 378, 389 (1989).  This "inadequacy of

police training may serve as the basis for § 1983 liability only where the failure to train amounts to

deliberate indifference to the rights of persons with whom the police come into contact."   *Id*. at

388.

  In her opposition, Delaney asserts that these defendants "lack a comprehensive use of force

policy at the Columbiana County Jail."   The basis for this conclusion is unclear.   During her

deposition, Reed identified a document entitled "Columbiana County Jail Policy and Procedure

3.1.8."   This document detailed the Jail's policy on the use of non-deadly force and restraints.

That policy contains the following provisions:

> Force should be employed only to the degree necessary to control the inmate with a
> minimum of harm to both staff and the inmate.  An inmate will be warned in
> advance before staff uses force[.]

> Whenever practical, Columbiana County Jail Officers of the same gender will be
> involved in forced moves and other applications of force.  At a minimum, one
> employee of the same gender will be present to observe the incident.

> For justification of the use of force, a subject's resistance initiates the officer's use
> of control method.  The level of physical force used by the officer is reasonable
> and necessary to the type of resistance offered by the subject.

As such, these defendants provided evidence that they have a policy in place to prevent the use of

excessive force.   In response, Delaney has offered no evidence that these defendants have

engaged in such inadequate training as to evidence the "deliberate indifference" necessary to

7

support liability under § 1983. Defendants Civigenics and Smith, therefore, are entitled to judgment on Delaney's § 1983 claim.

B. State claims against Civigenics and David L. Smith

Delaney also raises state claims against Civigenics and Smith.  In asserting a claim that Civigenics and David L. Smith violated Delaney's rights under Ohio Revised Code Section 311.05, Delaney must prove that the "sheriff . . . orders, has prior knowledge of, or participates in, acts in reckless disregard of, or ratifies the neglect of duty or misconduct in the office of the deputy."  It is unclear under what theory Delaney is pursuing her state law claims against these defendants.  However, it appears that Delaney is relying upon the same theory detailed above, namely a failure to have a comprehensive use of force policy.  As this Court has found this argument to lack merit, Delaney's state law claim fails as well.

C. Federal Claims Against Reed

In her motion for summary judgment, Reed has claimed that qualified immunity entitles her to judgment on Delaney's § 1983 claim against her.   For Delaney to overcome an affirmative defense of qualified immunity, she must demonstrate the following: "a constitutional violation has occurred . . . the violation involved a clearly established constitutional right of which a reasonable person would have known . . . [and the official's conduct was] objectively unreasonable in light of that clearly established right." *Barnes v. Wright*, 449 F.3d 709, 715 (6th Cir. 2006) (quoting *Sample v. Bailey*, 409 F.3d. 689, 695-96 (6th Cir. 2005) (alteration in original)).

"[C]laims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386,

8

395 (1989).   Viewing the evidence in a light most favorable to Delaney, Reed's claim of qualified immunity must fail.   Through her testimony, Delaney portrayed herself as a model prisoner.   She requested medication for a headache.   In return, she was maced twice, "body checked" for no apparent reason, and physically restrained to a bed.   If these facts are taken as true, there is no question that Reed's activities were objectively unreasonable and violated Delaney's clearly established constitutional rights.   As such, Reed's claim of qualified immunity must fail. Summary judgment on this claim, therefore, is DENIED.

   D.   State claims against Brenda Reed

   Reed next moves for summary judgment on any state claim alleged by Delaney against her. Under Ohio Revised Code § 2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."   However, Ohio Revised Code § 2744.03(A)(6)(b) denies Reed immunity if her actions were done with a "malicious purpose, in bad faith, or in a wanton or reckless manner."   As detailed above, if Delaney's version of events is accepted as true, there remains a genuine issue of material fact regarding whether Reed's actions were done in bad faith or a wanton and reckless manner.   Accordingly to Delaney, she was attacked and maced without provocation of any kind.   Summary judgment, therefore, is DENIED on Delaney's state law claim against Reed.

   E.   Federal claims against the City of Salem

   The City of Salem asserts that it is entitled to judgment on Delaney's § 1983 claim.   As this Court noted above, an "inadequacy of police training may serve as the basis for § 1983 liability

9

only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Harris*, 489 U.S. at 388.  Similar to this Court's analysis above as it related to Civigenics, Delaney's claim against the City of Salem must fail.

The City of Salem had a policy in place that detailed the appropriate use of force to be used by its officers.   That policy contains the following provisions:

> Varying degrees of force may be justified depending on the dynamics of a situation.
>
> In each individual event, lawful and proper force is restricted to only that force necessary to control and terminate unlawful resistance and to preclude any further attack against the police or any other persons.
>
> In no case shall police officers of this department use force other than that necessary to lawfully and properly neutralize an unlawful assault or that which is necessary to overcome resistance by a person being taken into custody.

In response to the City's motion, Delaney asserts that this policy is inadequate because it does not require officers to identify themselves before using force.   This Court finds no merit in such an argument.

"At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."   *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).   Delaney's allegation that the policy fails to contain an identification requirement cannot be linked to her alleged constitutional violation.   Regardless of whether the officers identified themselves, their use of force was strictly managed by the City's use of force policy.   Moreover, Delaney cannot demonstrate that the failure to explicitly require officers to identify themselves prior to using force contributed in any manner to the alleged constitutional violation.   Consequently, Delaney's claim against the City of Salem must fail.

F.   Federal claims against Officers Floor, Shafer, Shoaff, and Rozeski

10

The individual officers have asserted that they are entitled to judgment on Delaney's claims based upon qualified immunity.   In order to overcome a defense of qualified immunity, Delaney must show that: "a constitutional violation has occurred . . . that violation involved a clearly established constitutional right of which a reasonable person would have known . . . [and the official's conduct was] objectively unreasonable in light of that clearly established right." *Barnes*, 449 F.3d at 715 (quoting *Sample*, 409 F.3d. at 693 (alteration in original)).   "Qualified immunity must be granted if the plaintiff cannot establish each of these elements."   *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Williams ex. rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004)).   Importantly, each defendant's liability must be assessed individually, based on his or her own actions.   See *Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 352 (6th Cir.1984).

In her response, Delaney has not identified which officer allegedly "bounced" her head off of the police cruiser.   Consequently, while this use of force may have been excessive, Delaney has failed to create a genuine issue of material fact with respect to any of the defendants because she has not identified the individual defendant who allegedly performed this action.

This Court also notes that Delaney has failed to specifically identify which officers engaged in the activities inside her home.   Through their affidavits, however, Floor, Shoaff, and Shafer have indicated that they were involved in the arrest.   In contrast, Rozeski's affidavit demonstrates that he did not arrive until after Delaney was placed under arrest.   As there is no evidence in the record that Rozeski used any force against Delaney or entered her home in any manner, the § 1983 claim against him must fail.

The remainder of Delaney's argument focuses on the officer's entry into her home.

11

First, there is little question that if the officers' testimonies are credited, Delaney's claims must fail.  Under the officers' version of events, Floor was assaulted and they then arrested Delaney with a minimal use of force.  The officers assert that based on the facts contained in their affidavits, their actions were clearly objectively reasonable.  However, at this stage of the litigation, this Court must view the evidence in a light most favorable to Delaney.  Under Delaney's version of events, officers received a call regarding a domestic disturbance.  Upon being denied entry to the home, Floor kicked the door open and chased Delaney around the kitchen, and then placed her under arrest.

Floor's alleged illegal entry, however, does not warrant denying the motion for summary judgment.  "[P]roximate causation is an essential element of a § 1983 claim for damages." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir.1994) (citing *Doe v. Sullivan County, Tenn.*, 956 F.2d 545, 550 (6th Cir.1992)).  "[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury."  *Id.*  Specifically, "if the officers' use of force in arresting the suspect was reasonable in light of the plaintiff's struggle to resist arrest, the plaintiff's conduct would be the intervening cause of the injuries, and the illegal entry could not be deemed the proximate cause of those injuries."  *Estate of Soward v. Trenton*, 125 Fed. Appx. 31, 41 (6th Cir. 2005).

In the instant matter, assuming that Floor violated Delaney's Fourth Amendment rights when he allegedly kick down her door, Delaney has not demonstrated that this action was the proximate cause of her injuries.  In fact, Delaney admitted that she resisted arrest once Floor and the other officers entered her home.  Furthermore, this Court gives no credence to Delaney's claim that the officers failed to identify themselves.  Delaney's claim does not create a *genuine*

12

issue of material fact.   It is undisputed that all three officers were in full uniform at the time of the incident.   Additionally, while Delaney did not credit the statement because she believed it to be a joke, she admits that Floor identified himself as an officer before entering her home.   As such, the undisputed facts indicate that Delaney resisted arrest.

Any minor injuries suffered by Delaney resulted from her actions in resisting arrest. Delaney admittedly ran throughout her kitchen to avoid the officers.   She also conceded that she was neither kicked nor punched before being placed into custody.   The facts reveal that nothing approaching excessive force was used inside Delaney's home.   Finally, once she was arrested, Delaney was allegedly "dragged" to her car.   Again, however, any injuries resulting from this action were the result of Delaney's refusal to cooperate with officers during her arrest, not from actions by the officers which violated Delaney's rights.   Given that the officers' use of force was reasonable during Delaney's arrest, Floor's alleged illegal entry cannot be said to be the proximate cause of Delaney's injuries.

Based upon the above analysis, Delaney's § 1983 claims against officers Floor, Shoaff, Shafer, and Rozeski must fail.

## IV. Conclusion

Summary judgment is GRANTED on Delaney's claims against Smith, Civigenics, the City of Salem, Floor, Shoaff, Shafer, and Rozeski.   Summary judgment is DENIED on Delaney's claims against Reed.   Accordingly, the motions for summary judgment are GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

13

DATED: <u>April 17, 2008</u>                                 <u>*/s/ John R. Adams*              </u>
                                                       UNITED STATES DISTRICT JUDGE